UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Edgar Morales, Salvador Magaña, and Matthew Bagu, on behalf of themselves, the State of California, and all other similarly situated individuals, | No. 2:15-cv-01911-JAM-EFB |
| | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL** |
| Plaintiffs, | |
| v. | |
| Leggett & Platt Incorporated, a Missouri Corporation, et al. | |
| Defendants. | |

Plaintiffs Edgar Morales ("Morales"), Salvador Magaña ("Magaña"), and Matthew Bagu ("Bagu") (collectively, "Plaintiffs") move for class certification under Rule 23 of the Federal Rules of Civil Procedure. Mot., ECF No. 33; Mem., ECF No. 34. Defendants Leggett & Platt Incorporated ("Leggett") and L&P Financial Services Co. ("L&P") (collectively, "Defendants") oppose Plaintiffs' motion. ECF No. 44. A hearing on this motion was held on February 27, 2018. For the reasons set forth below and stated at the hearing, the Court grants Plaintiffs' motion

1  for class certification as to two purported subclasses, and
2  denies the motion as to the remaining three purported subclasses.

3      The Court also grants Plaintiffs' unopposed request
4  regarding appointment of counsel and class representatives in
5  this case.

6           I.   FACTUAL AND PROCEDURAL BACKGROUND

7      Plaintiff Morales worked at Defendants' Tracy location (the
8  "Tracy Branch") from 2011-2014 as a forklift operator, peeler
9  operator, and maintenance mechanic and was paid hourly.  Decl. of
10  Edgar Morales ("Morales Decl."), ECF No. 33-47, ¶ 3.  Plaintiff
11  Magaña worked at the Tracy Branch from 2012-2014 as a maintenance
12  mechanic and was paid hourly.  Decl. of Salvador Magaña ("Magaña
13  Decl."), ECF No. 33-46, ¶ 3.  Plaintiff Bagu worked at the Tracy
14  Branch from 2013-2014 as a mold operator and was paid hourly.
15  Decl. of Matthew Bagu ("Bagu Decl."), ECF No. 33-48, ¶ 3.

16     On April 28, 2015, Plaintiffs Morales and Magaña filed their
17  initial Complaint against Defendant Leggett in San Joaquin County
18  Superior Court.  Pls. Class Action Compl., ECF No. 1-1.  On July
19  22, 2015, Plaintiffs Morales and Magaña and additional Plaintiff
20  Bagu added Defendant L&P as a second defendant and filed a First
21  Amended Complaint (the "FAC"), seeking to proceed under the
22  California Labor Code Private Attorneys General Act ("PAGA") and
23  alleging Defendants violated state wage and hour laws by failing
24  to pay minimum wage; failing to pay overtime compensation;
25  failing to provide meal and rest breaks; unlawfully deducting
26  wages of employees; knowingly and intentionally failing to
27  maintain and provide accurate wage statements; failing to produce
28  or permit inspection of records; failing to timely pay wages due

at termination; and failing to indemnify employees for work expenses. FAC, ECF No. 1-2, ¶¶ 16, 108. Plaintiffs also alleged that Defendants violated California's Unfair Competition Law ("UCL"). Id., ¶¶ 106-114.

Defendants removed Plaintiffs' claims to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d), on September 10, 2012. Not. of Removal, ECF No. 1, at 1-2. On November 6, 2017, Plaintiffs filed their Motion for Class Certification and brief in support.

After the February 27, 2018 hearing on this motion, Plaintiffs filed a Notice of Subsequent Relevant Authority (ECF No. 49) and Defendants responded. ECF No. 50.

## II.   OPINION

### A.   Proposed Subclasses

Plaintiffs seek to certify the following five subclasses:

#### 1.   The Revision Zone Class

All nonexempt hourly employees who worked at the Tracy Branch between April 28, 2011 and November 14, 2014 and whose time was recorded using the Amano timekeeping system and experienced time shaving as a result of the Revision Zone programming in the Amano timekeeping system.  Mot. 2-3.

#### 2.   Doubletime Class

All non-exempt hourly employees who have worked at Defendants' Ontario location (the "Ontario Branch") and the Tracy Branch between April 28, 2011 and the present and had a shift of more than eight hours on a seventh consecutive workday in a workweek.  Mot. at 4.

### 3. 30 Minute Auto-Deduction Class

All non-exempt hourly employees who have worked at the Tracy Branch, and all factory non-exempt hourly employees who have worked at the Ontario Branch between April 28, 2011 and the present who had 30 minutes of pay automatically deducted for meal periods without a corresponding time entry showing that an unpaid meal period was recorded. Mot. at 4-5.

### 4. Meal Period Premium Class

All factory non-exempt hourly employees who (1) have worked at the Ontario and Tracy Branches between April 28, 2011 and the present, (2) have recorded untimely or short meal periods during shifts greater than six hours, or have worked more than 10 hours without recording a second meal period, and (3) have not received a meal period premium. Mot. at 5-6.

### 5. Uniform Deduction Class

All non-exempt employees who worked at the Ontario and Tracy Branches between April 28, 2011 and the present and had deductions on their wage statements (appearing in payroll as code 870) for maintenance of their work uniform. Mot. at 6.

Plaintiffs' initially sought class certification of a sixth subclass, i.e. the Mechanics Class, but confirmed at the hearing on this motion that they had abandoned it. Mot. at 6; see Reply, ECF No. 45.

### B. Discussion

Under Rule 23(a), a plaintiff seeking to certify a class must show that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

4

representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." The plaintiff must then satisfy one of the three Rule 23(b) categories. In the instant case, the parties focus on the "predominance" and "superiority" category under Rule 23(b)(3).

Failure to satisfy any element of Rule 23(a) or 23(b) requires denying class certification. Rutledge v. Electric Hose & Rubber Co., 511 F.2d 668, 673 (9th Cir. 1975).

### 1. Numerosity

Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Defendants do not challenge Plaintiffs' satisfaction of this requirement for any of the purported classes and the Court finds Plaintiffs satisfy the numerosity requirement for all five purported subclasses. See Opp.

### 2. Ascertainability

"As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." Backhaut v. Apple Inc., 2015 WL 4776427, at *9 (N.D. Cal. Aug. 13, 2015) (quoting Sethavanish v. ZonePerfect Nutrition Co., No. 12-2907, 2014 WL 580696 (N.D. Cal. Feb. 13, 2014)). "A class definition should be 'precise, objective, and presently ascertainable,' that is the class must be 'definite enough that it is administratively feasible for the court to ascertain whether an individual is a member.'" Roth v. CHA Hollywood Medical Center, L.P., No. 2:12-cv-07559, 2013 WL

5775129, at *4 (C.D. Cal., Oct. 25, 2013) (quoting O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998)).

### 3. Commonality

Commonality requires Plaintiffs to affirmatively show "that the class members have suffered the same injury." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349-50 (2011) (internal quotation marks and citation omitted). The class's common contention must be "capable of class-wide resolution." Id. "Dissimilarities within the proposed class" impede the commonality requirement because they prevent the formation of "even a single common question." Id. at 350, 359.

### 4. Typicality

Rule 23(a)(3) requires that the claims or defenses of the class representative "be typical of the claims or defenses of the class." "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Dukes, 131 S.Ct. at 2550 (citation omitted). Representative parties' claims are "typical" when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability. Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001) (abrogated on other grounds) (citing Marison v. Giuliani, 126 F.3d 372, 376 (2nd Cir. 1997)).

### 5. Adequacy

"Adequacy of representation" requires that class representatives "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). Defendants do not challenge Plaintiffs' arguments with respect to this requirement

for any of the purported subclasses and the Court finds
Plaintiffs have satisfied the adequacy requirement for all five
purported subclasses.  See Opp.

### 6.   Predominance

To certify a class under Rule 23(b)(3), the court must find
that the questions of law or fact common to class members
predominate over any questions affecting only individual
members.  Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935,
944 (9th Cir. 2009) (internal quotation marks and citation
omitted).  The predominance criterion tests whether proposed
classes are sufficiently cohesive to warrant adjudication by
representation.  Anchem Prods., Inc. v. Windsor, 521 U.S. 591,
623 (1997).

### 7.   Superiority

The final inquiry for certification is whether a class
action is superior to other available methods for fairly and
efficiently adjudicating the controversy.  Vinole, 571 F.3d at
944.

Defendants do not challenge Plaintiffs' satisfaction of the
superiority element for any of the purported subclasses.  The
Court therefore finds Plaintiffs have satisfied this
requirement for all five purported subclasses.  See Opp.

### C.   Analysis

#### 1.   The Revision Zone Class

Plaintiffs contend that Defendants' policy and practice of
shaving up to 15 minutes of compensable work time using the
Amano timekeeping system led to a failure to pay Defendants'
employees for all the time they worked, in violation of

California Labor Code § 1197, case law, and Wage Order 1.  Mem. at 7-8 (citing 30(b)(6) Deposition Testimony of Michelle Wingo, ECF No. 33-3, at 128:17-129:5, 133:16-134:7, 134:17-23; Decl. of Aaron Woolfson, ECF No. 35, ¶ 18).

California Labor Code § 1197 provides, in relevant part, that "minimum wage for employees fixed by the commission ... is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful."  Wage Order 1 states, in relevant part, "[e]very employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise."  8 Cal. Code Regs., § 11010, subd. 4(B)."

a.  <u>Commonality</u>

Plaintiffs contend that "[t]he common question of fact to this class is whether Defendants failed to compensate class members at the minimum wage for all hours worked" and that this question can be answered by looking at Defendants' Person Most Knowledgeable ("PMK") testimony and an analysis of Defendants' payroll and timekeeping records.  Mem. at 8.  But Plaintiffs fail to explain how a factfinder can resolve, on a class-wide basis, whether each individual class-member actually performed compensable work in the time between when they clocked in and the start of their shift.  Resolving this issue is necessary to determining whether Defendants failed to compensate a class member for all hours worked.

In contrast, Defendants have provided declarations from

several employees stating that they do not perform compensable work during the shaved time, and instead clock in and then wait for a paid safety meeting to start at the beginning of their shift.  Opp. at 6-7 (citing Decl. of Jaasiel Picos ("Picos Decl."), ECF No. 44-16, ¶ 15; Decl. of Peter Sirivan ("Sirivan Decl."), ECF No. 44-20, ¶ 15; Decl. of Jesus Bautista ("Bautista Decl."), ECF No. 44-8, ¶ 1; Decl. of Aaron Aguayo ("Aguayo Decl."), ECF No. 44-6, ¶ 14; Decl. of Richard Ulloa ("Ulloa Decl."), ECF No. 44-22, ¶ 13; Decl. of Paco Galvan ("Galvan Decl."), ECF No. 44-9, ¶ 14; Decl. of Isaac Williams ("Williams Decl."), ECF No. 44-23, ¶ 12).

These declarations, regardless of their accuracy, affirm the individual nature of determining whether an employee performed compensable work in the time between when they clocked in and the start of their shift.  Indeed, none of the employees who provided declarations in support of Plaintiffs' motion testified that they actually performed compensable work in the time between when they clocked in and when they started their shift.  See Decls. of Salvador Magaña, Edgar Morales, Matthew Bagu, and Mike Aguilar, ECF Nos. 33-46-33-49; Decls. of Aaron Aguayo, Jesus Bautista, and Jaasiel Picos, ECF Nos. 45-3-45-5.

Plaintiffs attached Richardson v. Interstate Hotels & Resorts, Inc., No. C 16-06772, 2018 WL 1258192 (N. D. Cal. Mar. 12, 2018) to their Notice of Subsequent Relevant Authority in support of their motion.  The court in Richardson certified a class whose time punches were rounded to the quarter hour for purposes of calculating wages, which, according to the plaintiff in that case, resulted in under-compensating employees.  Id., at

*5. But that court did not consider whether employees actually worked in the time for which they were allegedly under-compensated. See id. Because that issue is crucial to this case and cannot be resolved on a class-wide basis, Richardson is distinguishable.

The Revision Zone's class contention that Defendants failed to compensate class members at the minimum wage for all hours worked cannot be resolved without an individual inquiry into whether each class member performed compensable work in the time between when they clocked in and the start of their shift. So the Court cannot, and does not, grant class certification as to this subclass. Dukes, 564 U.S. at 350 ("That common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.")

## 2. The Doubletime Class

Plaintiffs contend that Defendants' policy and practice through their Amano timekeeping system of not providing for doubletime premium pay ("Doubletime Pay") after the 12th hour in a workday means that every shift over eight hours on the seventh consecutive workday in a workweek violates Cal. Labor Code § 510 and Wage Order 1. Mot. at 4; Mem. at 3, 8.

Wage Order 1 provides that employees must receive "[d]ouble the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek." 8 Cal. Code Regs., § 1101, subd. 3(A).

10

When an employee works more than eight hours in one "workday,"
more than forty hours in one "workweek," or for eight or fewer
hours on the seventh day of the workweek, the employee is
entitled to receive compensation at one and one-half times the
employee's regular rate of pay.  Cal. Lab. Code § 510(a).

### a.   Ascertainability

Plaintiffs contend that determining which employees were
improperly denied Doubletime Pay can be ascertained by reviewing
the Amano time records and payroll.  Reply at 2.  Defendants
counter that it would be difficult for the Court to ascertain
which individuals worked on a seventh consecutive workday in a
workweek and, of those, which worked more than 8 hours and, of
those, who was not paid at the rate of twice the regular rate of
pay.  Opp. at 3-4.  Defendants' reliance on Roth, 2013 WL
5775129, at *4, to support their argument is misplaced.  In
Roth, the court found the plaintiffs' purported classes
unascertainable.  Id., at *5.  The court reasoned that it would
have had to first apply Brinker v. Sup. Ct., 53 Cal. 4th 1004,
1053 (2012) (Werdegar, J., conc.) to make a legal determination
of whether meal and rest break periods were actually provided to
employees to then ascertain class members, a cart-before-the-
horse problem.  Roth, 2013 WL 5775129, at *5.  Further, the
defendant in that case argued that payroll records would not
reveal whether employees took meal or rest breaks since
employees did not clock out for rest breaks and meal breaks were
sometimes not taken by employees.  Id.

Here, as explained above, the Court does not need to make a
legal determination before ascertaining class members.  The

Court can determine which individual class members were affected by Defendants' policy of not paying Doubletime Pay by looking at Defendants' PMK testimony, the Amano time records, and payroll data. No individual employee testimony would be needed. Accordingly, the Court finds Plaintiffs have satisfied this element for this subclass.

### b. Commonality

Plaintiffs assert that a common question of fact for the Doubletime Class is whether Defendants maintained a policy that failed to provide workers with Doubletime Pay when required. Mem. at 8. Plaintiffs contend that this can be answered for the whole class through Defendants' PMK testimony. Id.

Defendants argue that there is conflicting testimony about how their Doubletime Pay policies applied to individual employees. See Opp. at 8. Defendants cite declarations testifying that employees actually received Doubletime Pay. Opp. at 8. Defendants, however, fail to explain why the fact finder cannot simply defer to their time records and payroll data in lieu of individual testimony. Absent such an explanation, the Court finds Plaintiffs have satisfied this element since their class-wide contention that Defendants maintained a policy that failed to provide workers with Doubletime Pay is "capable of class-wide resolution" by examining Defendants' PMK testimony, the Amano time records, and payroll. Dukes, 564 U.S. at 350.

### c. Typicality

Plaintiffs argue that the named Plaintiffs' claims are typical of the rest of this class because they involve the same

type of injury caused by the Defendants' standardized policy of not adequately providing Doubletime Pay. See Mem. at 11-12. Defendants counter that Plaintiffs' reliance on their own testimony and the testimony of one putative class member as proof of company-wide practices is insufficient to establish typicality. Opp. at 5-6. Defendants cite the following cases in support of their argument: Pena v. Taylor Farms Pacific, Inc., 305 F.R.D. 197, 223 (E.D. Cal. 2015), Zayers v. Kiewit Infrastructure West Co., No. 16-cv-06405, 2017 WL 4990460, at *5 (C.D. Cal. Oct. 26, 2017), Garcia v. Sun Pacific Farming Cooperative, No. CV F 06-0871, 2008 WL 2073979, at *3 (E.D. Cal. Feb. 21, 2014), and Rojas v. Marko Zaninovich, Inc., No. 1:09-CV-00705, 2012 WL 439398, at *29 (E.D. Cal. Feb. 9, 2012). Those cases are unavailing.

In Pena, the court found the plaintiffs satisfied typicality and certified the subclass at issue even though the plaintiffs only provided a few declarations describing the alleged harms. 305 F.R.D. at 223. Here, Plaintiffs have provided declarations and also analyzed time and payroll records for purported class-members. The court in Zayers did not analyze typicality and so this case is of little help to the Court here. See 2017 WL 4990460. The courts in Garcia and Rojas emphasized the difficulty in certifying classes where there were conflicting declarations and no time and payroll records. See Garcia, 2008 WL 2073979, at *3 (denying certification where time records did not state what the plaintiffs claimed); Rojas, 2012 WL 439398, at *18 and *29 (certifying sub-minimum hourly wage plus piece rate subclass

where payroll database could show below minimum compensation while denying certification of pre-shift work subclass where plaintiffs relied on anecdotal evidence that conflicted with testimony submitted by the defendants and no records of pre-shift work existed).  But here, the conflicting declarations are not dispositive since the factfinder can defer to Defendants' time and payroll records to determine individual class-members' injuries caused by Defendant's alleged policy of not providing Doubletime Pay.

Plaintiffs and class-members who suffered from Defendants' alleged standardized policy of not providing Doubletime Pay would use Defendants' time and payroll records and make similar legal arguments in their attempt to prove Defendants' liability. The Court finds Plaintiffs have satisfied the typicality element as to this subclass.  See Dukes, 131 S.Ct. at 2550; Armstrong, 275 F.3d at 868.

d.   Predominance

Plaintiffs claim that common questions of fact predominate over individual questions for this subclass because the claim could be adjudicated through a payroll redo complying with California law, in light of Defendants' PMK testimony, documents produced during discovery, Plaintiffs' expert analysis and class members' declarations.  See Mem. at 12-13; Reply at 2. Plaintiffs also argue that common questions of law and fact predominate over individual inquiries because they have identified the relevant policy (Defendants' failure to provide Doubletime Pay) and the laws they allegedly violate (California Labor Code § 1197 and Wage Order 1).  See Mem. at 12-13 (citing

14

1  Bibo v. FedEx, No. C 07-2505, 2009 WL 1068880, at *10 (N.D. Cal.
2  Apr. 21, 2009)).

3      Defendants contend that even if there was a class-wide
4  policy of not providing Doubletime Pay, it was not uniformly
5  applied.  But the only case Defendants cite to support their
6  argument, Valdez v. Neil Jones Food Co., No. 1:13-cv-00519, 2014
7  WL 3940558, at *7 (E.D. Cal. Aug. 12, 2014), is unpersuasive.
8  In Valdez, the Court found individual inquiries predominated for
9  the purported class at issue because it needed to consider
10 "where the individual employees spent their time and whether
11 they were performing similar duties."  2014 WL 3940558, at *7
12 (citing Lusby v. Gamestop Inc., 297 F.R.D. 400, 413 (N. D. Cal.
13 2013)).  Those issues do not apply to the Doubletime Class.
14 Again, the Court need only look at Defendants' time and payroll
15 records to determine which employees were improperly denied
16 Doubletime Pay.

17     Defendants also argue that the Doubletime Class asserts
18 violations of the California waiting time law, which requires an
19 inquiry into whether Defendants were willful.  Opp. at 14.
20 Defendants cite In re Taco Bell Wage & Hour Actions, 2011 WL
21 4479730, at *5, (E. D. Cal. Sept. 26, 2011) to support their
22 argument.  In Taco Bell, the court found that individual
23 inquiries would exist as to willfulness because there were
24 potential individual good faith disputes over whether wages were
25 due and whether an employer acted willfully.  Id., at *5.  But
26 here, the parties agree that Defendants' payroll and time
27 records are accurate and so the Court need not conduct
28 individual inquiries over disputes of whether wages were due.

See Woolfson Decl., at 12. Further, since Taco Bell was decided, the Ninth Circuit has reversed denials of class certification motions where waiting time penalties were involved. See Levya v. Medline Industries, Inc., 716 F.3d 510, 512 (9th Cir. 2013). So Defendants' suggestion that requesting waiting time penalties dooms class certification is incorrect.

In sum, the Court finds that common questions of law and fact—whether Defendants violated California labor laws and the Wage Order by failing to provide Doubletime Pay—predominate over individual inquiries. Given that Defendants concede Plaintiffs have satisfied the remaining Rule 23 elements of numerosity, adequacy, and superiority, the Court grants Plaintiffs' motion for class certification as to the Doubletime Class.

### 3. 30 Minute Auto-Deduction Class

Plaintiffs claim Defendants' policy of automatically deducting 30 minutes of pay from employees for meal periods without a corresponding time entry showing that an unpaid meal period was recorded violates Wage Order 1 and Cal. Lab. Code §§ 510, 512, and 226. Mot. at 4-5; Mem. at 3-4, 8-9. In California, "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes [.]" 8 Cal. Code Regs., § 11010, subd. 11(A). Further, "[a]n employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes [.]" Cal. Lab. Code § 512. Wage Order 1 also states that meal periods shall be recorded. 8 Cal. Code. Regs., § 11010, subd. 7(A)(3). Finally, the failure to record meal

periods creates a "rebuttable presumption . . . that the employee was not relieved of duty and no meal period was provided." Brinker, 53 Cal. 4th at 1053; see also ABM Indus. Overtime Cases, 19 Cal. App. 5th 277, 311-12 (2017).

### a. Ascertainability

Plaintiffs claim that all employees who experienced auto-deductions can be ascertained by review of Defendants' records. Reply at 2-3. Defendants contend the 30 Minute Auto-Deduction Class is not ascertainable because individual inquiries are required to determine which employees had 30 minutes automatically deducted for meal periods, which did not have a corresponding time entry, and which did not receive the meal period as required. Opp. at 4. Defendants rely on Roth for support. 2013 WL 5775129, at *4. This reliance is misplaced given that the plaintiffs in Roth, unlike Plaintiffs here, did not allege any auto-deductions of meal periods and only alleged that there was a word-of-mouth meal break policy that was unlawful. Id.

Determining whether individual employees that received auto-deductions actually received meal breaks may be difficult. But Defendants' failure to keep records of meal breaks being taken results in a presumption that meal breaks were not given. Brinker, 53 Cal. 4th at 1053; see also ABM Indus. Overtime Cases, 19 Cal. App. 5th at 311-12. The Court finds that it would not have to engage in possibly difficult individual inquiries to decipher who should be a part of this subclass and therefore Plaintiffs have satisfied this element.

### b. Commonality

17

Plaintiffs argue that a common issue of fact for this class is whether Defendants maintained a policy of automatically deducting 30 minutes of time from shifts lasting at least 6 hours without supporting records. Mem. at 9-10. Plaintiffs assert the issue can be decided by looking at Defendant's PMK testimony, Plaintiffs' declarations, and Plaintiffs' data expert's analysis of Defendants' payroll and timekeeping records. Id., at 10.

In Wilson v. TE Connectivity Networks, Inc., No. 14-cv-04872, 2017 WL 1758048, at *7-11 (N.D. Cal. Feb. 9, 2017), the court certified an auto-deduction meal period class similar to the one here. The defendants in that case argued that they never paid additional compensation to employees in lieu of missed meal breaks because employees always received their meal breaks. Id., at *11. The Court found the defendants' "assertion is insufficient to defeat certification" and found that Plaintiffs' claims of the auto-deduction policy sufficed to satisfy the commonality and predominance requirements. Id.

Other courts have also found auto-deduction classes satisfy the commonality requirement. See, e.g. Villa v. United Site Servs. Of California, Inc., No. 5:12-cv-00318, 2012 WL 5503550 (N.D. Cal. Nov. 13, 2012) (ruling that "[t]hough there may be divergent factual predicates concerning how th[e] [auto-deduct] policy affected different employees, it does raise shared legal issues, which is all that is required to satisfy the commonality requirement of Rule 23(a)") (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998)); Blackwell v. SkyWest Airlines, Inc., 245 F.R.D. 453, 461 (S.D. Cal. 2007) (ruling

that the defendant having a procedure to correct the auto-deduct policy did not negate the fact that common legal and factual questions existed).

Defendants contend that Plaintiffs cannot satisfy the commonality element because their written policies are to provide meal periods and any inconsistencies in how meal periods are taken depend on each individual employee's circumstances. Opp. at 8-9. Defendants rely on Roth, Garcia, and Dukes in support of this argument. Defendant's reliance is again misplaced because none of these cases involved auto-deduction policies. See Roth, 2013 WL 5775129; Garcia, 2008 WL 2073979; Dukes, 564 U.S. 338. And even though there is conflicting testimony over whether meal periods were taken, individual inquiries are unnecessary to resolve the claims of the subclass members because of (1) the presumption that meal periods were not taken where no meal periods were recorded and (2) the existence of time and payroll data showing consistent automatic deductions of 30-minute meal periods. Brinker, 53 Cal. 4th at 1053; See Woolfson Decl. at 14-15.

Defendant's PMK testimony and Defendants' payroll and timekeeping data can resolve the common issue of fact for this class—whether Defendants' maintained a policy of automatically deducting 30 minutes of time from shifts lasting at least 6 hours without supporting records of meal periods being taken. The Court finds Plaintiffs have satisfied this element.

### c.  Typicality

Plaintiffs argue that their claims are typical of the rest of this class because they involve the same type of injury

caused by the same standardized policy of Defendants automatically deducting 30 minutes of time from shifts lasting at least 6 hours without supporting records of meal periods being taken.  See Mem. at 11-12.  Defendants counter that Plaintiffs' reliance on their own testimony and the testimony of one putative class member as proof of company-wide practices is insufficient to establish typicality.  Opp. at 5-6.  Defendants again rely on Pena, Zayers, Garcia, and Rojas to support their argument.  As explained above, those cases are of little help to Defendants.  Zayers did not address typicality and Plaintiffs, unlike the plaintiffs in the other three cases, have analyzed time and payroll records for class-members instead of solely relying on individual testimony.  See Zayers, 2017 WL 4990460; Pena, 305 F.R.D. at 223; Garcia, 2008 WL 2073979, at *3; Rojas, 2012 WL 439498, at *18 and *29.

Plaintiffs and subclass members who suffered from Defendants' standardized auto-deduction policy incurred the same injury and would make similar legal arguments to prove Defendants' liability.  The Court finds Plaintiffs have satisfied this element.  Dukes, 131 S.Ct. at 2550; Armstrong, 275 F.3d at 868.

### d.   Predominance

Plaintiffs argue that common questions of fact predominate over individual questions for this subclass because the claim can be resolved through examining Defendants' PMK testimony, documents produced during discovery, Plaintiffs' expert analysis and class members' declarations.  See Mem. at 12-13; Reply at 2. Plaintiffs further contend that common questions of law and fact

predominate over individual inquiries because they have identified the relevant policy (Defendants' policy of automatically deducting 30 minutes of time from shifts lasting at least 6 hours without supporting records of meal breaks) and the laws it allegedly violates (California Labor Code § 1197 and Wage Order 1).  See Mem. at 12-13 (citing Bibo v. FedEx, No. C 07-2505, 2009 WL 1068880, at *10 (N.D. Cal. Apr. 21, 2009)).

As explained above, in Wilson, 2017 WL 1758048, at *7-11, the court found that the plaintiffs' claims of an auto-deduction policy sufficed to satisfy the commonality and predominance requirements.  At the hearing, Defendants argued that the court should instead apply Villa, 2012 WL 5503550 and Blackwell, 245 F.R.D. at 461, where courts found plaintiffs did not satisfy the predominance element.  But the predominance analyses from those cases do not apply to the facts at hand.

In Villa, the plaintiffs could not satisfy the predominance requirement for the meal and rest classes because the plaintiff's single declaration was not enough to show that the employer had an unlawful uniform policy.  2012 WL 5503550, at *10-12.  Further, the time records in Villa did not provide enough information to determine the defendant's liability for the doubletime class.  Id., at *12.  In contrast, Defendants' time and payroll records provide enough information to determine whether Defendants implemented an unlawful auto-deduction policy.  So Defendants' reliance on Villa's predominance analysis is misplaced.

In Blackwell, the court found it could not determine which employees received meal breaks without individual inquiries,

since there were no records of meal breaks.  245 F.R.D. at 467-68.  Blackwell, however, did not account for the Brinker presumption that a lack of meal period records suggest meal periods were not actually taken.  53 Cal. 4th at 1053.  So the Blackwell meal period analysis is not persuasive.  For the other classes in Blackwell, the court found numerous individual questions arose that could not be answered by examining payroll and time records.  245 F.R.D. at 468-70.  In contrast, here the Court can use payroll and time data to determine whether Defendants had an unlawful policy of automatically deducting 30 minutes of time from shifts lasting at least 6 hours without supporting records of meal breaks.

Further, for the reasons stated above, the Court rejects Defendants' waiting time arguments for this class.  Because the Court can use Defendants' payroll and time records to determine whether Defendants had an unlawful auto-deduction policy, the Court finds that common questions of law and fact predominate over individual inquiries for this class.

Finally, with respect to this subclass, Defendants concede that Plaintiffs have satisfied the remaining elements of numerosity, adequacy, and superiority.  Having satisfied all the Rule 23 elements, Plaintiffs' motion for class certification as to the 30 Minute Auto-Deduction Class is granted.

### 4.   The Meal Period Premium Class

Plaintiffs seek to certify this subclass based on Defendants employing an ad hoc system of providing meal periods where supervisors or leads are responsible for relieving workers for meal breaks, as production permits.  Mem. at 4 (citing

Deposition of Thomas P. Ramirez ("Ramirez Depo."), ECF No. 33-4,
at 35:7-36:9, 67:6-13; Deposition of Jon Ryder Gullette
("Gullette Depo."), ECF No. 33-5, at 20:4-21:9).  Specifically,
Plaintiffs contend that Defendants' employees must obtain
authorization to take meal breaks and receive permission only
after accommodating production needs.  Mem. at 4-5 (citing
Ramirez Depo. at 37:1-38:16, 86:5-22, 112:8-113:25; Gullette PMK
Depo. at 20:4-21:19).  There are also many untimely and missed
meal periods in Defendants' timekeeping records.  Id. (citing
Woolfson Decl., ¶ 18).  Plaintiffs claim Defendants' policy
results in a failure to pay meal period premiums to those who
had a short (less than 30-minutes), late (after the fifth hour
of work), or missed meal period, in violation of Wage Order 1
and Labor Code §§ 512 and 226.  Mot. at 5-6; Mem. at 10.

In their opposition, Defendants include testimony that
managers rotated meal and rest periods between employees
throughout the day to keep production smoothly, while complying
with laws requiring employees get timely and appropriate breaks.
Opp. at 11 (citing Gullette Depo. 18:9-19:2; Decl. of Angel
Madson, ECF No. 44-13, ¶ 10; Decl. of Rafael Zermeno ("Zermeno
Decl."), ECF No. 44-24, ¶ 11; Picos Decl., ¶ 8; Ramirez Depo. at
36:13-38:6, 123:8-124:13).  Defendants provide further testimony
that employees were trained and reminded on proper meal period
compliance (one 30 minute meal period before the fifth hour of
work and a second 30 minute meal period after ten hours of work)
and were disciplined for taking short meal periods.  Opp. at 11
(citing Picos Decl., ¶ 10; Decl. of Raymond Moreno, ECF No. 44-
15, ¶ 10; Zermeno Decl., ¶ 7; Decl. of Fernando Mejia, ECF No.

1    44-14, ¶ 9; Decl. of Gustavo Garcia, ECF No. 44-10, ¶ 9; Decl.

2    of Jerry Storey, ECF No. 44-21, ¶ 8; Decl. of Ramiro Lopez, ECF

3    No. 44-12, ¶ 11; Decl. of Ozzy Rauda, ECF No. 44-18, ¶ 12).

4         Employers failing to provide meal periods as required by

5    the Wage Order must pay "one additional hour of pay at the

6    employee's regular rate of compensation for each work day that

7    the meal … is not provided." Cal. Code Regs. § 11010, subd.

8    11(B); Cal. Lab. Code § 226.7(b). And a plaintiff's punch data

9    can establish that employees' accrued unpaid meal period premium

10   wages are capable of common proof. Safeway, Inc. v. Sup. Ct.,

11   238 Cal. App. 4th 1138, 1160 (2015).

12        But an employer's duty to pay an employee a meal period

13   premium is only triggered by a failure to provide a meal period.

14   In re Taco Bell Wage and Hour Actions, 2012 WL 5932833, at *10.

15   In these cases, "individual inquiry [is] necessary to determine

16   if a meal break was in fact denied." Id. Inconsistency in the

17   administration of meal periods or sporadic irregular departures

18   from company policy is insufficient to certify a proposed class,

19   as it would require the court "to make individual determinations

20   as to whether employees… received meal periods." Garcia, 2008

21   WL 2073979 at *5; see also Zayers, 2017 WL 4990460, at *4

22   (holding no common proof capable of resolving on a class-wide

23   basis whether Defendants failed to provide employees with an

24   opportunity to take meal breaks since it would require

25   individual inquiry as to every class member and whether they

26   took meal breaks, whether they were denied the opportunity to

27   take them, or whether and why they waived them).

28              a.    Commonality

                           24

Plaintiffs argue that the common question of fact here is whether Defendants maintained a policy that failed to pay meal period premiums to workers who had a short (less than 30-minutes), late (after the fifth hour of work), or missed meal period.  Mem. at 10.  Plaintiffs claim this can be determined on a class-wide basis by Defendants' PMK testimony and Plaintiffs' expert's declaration.  Id.

Defendants respond that in cases like this, "individual inquiry [is] necessary to determine if a meal break was" denied, since an employer's duty to pay an employee a meal period premium "is only triggered when the employer 'fails to provide' a meal period."  Opp. at 10 (citing Taco Bell, 2012 WL 5932833, at *10).  The Taco Bell court refused to certify the plaintiffs' meal period premium class, since employers "are only liable for premium pay when they fail to provide a meal break[.]"  Taco Bell, 2012 WL 5932833, at *10.  Defendants argue that the same is true here, since the Court will need to undertake individualized inquiries to determine whether and why each subclass member was denied a meal break for each meal-period.  Opp. at 10.  Defendants contend that this forecloses class-wide adjudication of this subclass.  Id. (citing Ordonez v. Radio Shack, Inc., No. CV 10-7060, 2013 WL 210223, at *7 (C.D. Cal. Jan. 17, 2013) (finding there is no way of determining on a class-wide basis whether time records show violations, or whether individual class members voluntarily elected "to start their meal break late, cut it short or take a meal break at all.")).

Plaintiffs counter that the evidence shows a uniform

1   practice of not paying meal period premiums for facially

2   noncompliant meal periods.  Reply at 3.  Plaintiffs add that

3   even though some employees sometimes execute meal period

4   waivers, those shifts can be excluded and that if any meal

5   periods are missing, it is because the employees' supervisors

6   did not allow them.  See id.

7        Plaintiffs also attempt to distinguish Ordonez by claiming

8   that commonality was not found there because the plaintiff

9   admitted there was no 'common document' that could establish who

10  was damaged and only pointed to a potentially unlawful written

11  policy.  Reply at 5 (citing Ordonez, 2013 WL 210223).  But in

12  Ordonez, as in the instant case, the plaintiff presented time

13  records showing missing meal breaks where the defendants'

14  employees also had to obtain supervisor permission to take a

15  meal break.  Ordonez, 2013 WL 210223, at *7.  The court found

16  that this evidence was not conclusive, since the missing meal

17  periods could have been violations or maybe the individual class

18  members voluntarily opted to start their meal breaks late, cut

19  them short, or skip the breaks entirely.  Id.  The same is true

20  here and the Court cannot simply assume that where meal periods

21  are missing, it is because employee supervisors did not allow

22  them.  Plaintiff's attempt to distinguish Ordonez fails.

23       Because determining whether and why employees may not have

24  taken meal periods is an individualized inquiry and because

25  there is conflicting testimony about Defendants' policies and

26  the application thereof, the Court finds Plaintiffs have not

27  shown that this subclass satisfies the commonality element.

28  Taco Bell, 2012 WL 5932833, at *10; Ordonez, 2013 WL 210223, at

*7. Accordingly, the Court denies certification of this subclass.

### 5. The Uniform Deduction Class

Plaintiffs contend that Defendants' policy of deducting sums for maintenance of uniforms results in inaccurate wage statements and unlawful withholding of wages or deduction from wages for employees who have separated from Defendants, in violation of California Labor Code §§ 203, 2802(a), and/or 221 and 224. Mot. at 6; Mem. at 10-11.

Labor Code § 2802(a) states that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties [.]" Wage Order 1 states that "[w]hen uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer." 8 Cal. Code Regs., § 1101, subd. 9(a).

In response to Plaintiffs' contention, Defendants provide undisputed evidence that uniforms were not required at either the Tracy Branch or Ontario Branch and that any employee who wore a uniform did so voluntarily. Opp. at 12 (citing Gullette Dep. 124:9-18; Ramirez Depo. 41:15-21, Moreno Decl., ¶ 15; Bautista Decl., ¶ 13; Picos Decl., ¶ 14; Lopez Decl., ¶ 15). Plaintiffs have neither alleged that uniforms were required or submitted any evidence to support such an allegation. See Mot; Mem. Defendants' policy would only violate Labor Code § 2802(a) or Wage Order 1 if uniforms were necessary or required.

Because Plaintiffs have neither alleged nor produced

evidence of any legal violations as to this subclass, Plaintiffs' motion to certify the Uniform Deduction Class is denied.

D.   <u>Plaintiffs' Request To Strike And Evidentiary Objections</u>

At the hearing, the Court denied Plaintiffs' request to strike and evidentiary objections to Defendants' declarations attached to their opposition.  ECF No. 46.  The Court affirms its denial.

### III.   ORDER

For all the reasons stated at the February 27, 2018 hearing on this motion and set forth above, the Court GRANTS Plaintiffs' motion to certify the two subclasses identified by Plaintiffs as the "Doubletime Class" and the "30 Minute Auto-Deduction Class". The Court DENIES Plaintiffs' motion to certify any of the other proposed subclasses.

IT IS FURTHER ORDERED that Plaintiffs Edgar Morales, Salvador Magana, and Matthew Bagu are appointed Class Representatives, and Mallison & Martinez is appointed as Class Counsel.

IT IS SO ORDERED.

Dated: April 5, 2018

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE